# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **ROGER E. COMPTON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:08CV00035 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | Chief United States District Judge |
| **SOCIAL SECURITY**, | ) | |
| | ) | |
| Defendant. | ) | |

*Allison Mullins, Lee & Phipps, P.C., Wise, Virginia, for Plaintiff; Michelle Scotese, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Roger E. Compton filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381-1383 (West 2003 & Supp. 2008). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, the court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted). It is not the role of this court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff protectively filed for DIB and SSI on July 31, 2006, alleging disability beginning August 31, 2005, due to back and leg pain, nerves, and depression. (R. at 62-71.) This claim was denied initially on November 7, 2006 (R. at 38), and upon reconsideration on March 6, 2007. (R. at 45.) At his request, the plaintiff received a hearing before an administrative law judge ("ALJ") on September 17, 2007. (R. at 20-33.) At that time, the plaintiff, who was represented by counsel, testified. (*Id*.) By decision dated October 4, 2007, the ALJ denied the plaintiff's claim for DIB and SSI. (R. at 10-17.)

The plaintiff filed a request for review of the ALJ's decision with the Social Security Administration's Appeals Council ("Appeals Council"), but was denied on May 28, 2008. (R. at 1.) Thus, the ALJ's opinion dated October 4, 2007, constituted the final decision of the Commissioner. The plaintiff then filed his Complaint with this court on July 22, 2008, objecting to the final decision of the Commissioner.

The parties have filed cross motions for summary judgment and have briefed and orally argued the issues. The case is now ripe for decision.

II

The summary judgment record reveals the following facts. The plaintiff was forty-two years old at the time of the ALJ's decision, making him a younger individual under the Commissioner's Regulations. *See* 20 C.F.R. § 404.1563(c) (2008). He has a twelfth grade education and has past relevant work experience as a heavy equipment operator in the logging industry, a foundry mechanic, and as an assembly line welder. He has not engaged in substantial gainful activity since August 31, 2005. He claims disability based on low back pain that radiates into the left leg and depression. (R. at 12-17, 80, 83.)

On January 17, 2006, the plaintiff saw Todd A. Cassel, M.D., complaining of back pain and discomfort down his left leg. Dr. Cassel documented that there was no

deformity, a negative straight leg raise, and that his reflexes were symmetrically intact. He prescribed ibuprofen and told the plaintiff to return for a sigmoidoscopy. (R. at 145.)

The plaintiff returned to Dr. Cassel with worsening back pain on September 11, 2006. He related increasing difficulties with the pain in his leg and that he felt down, irritable, and moody. Dr. Cassel found a slight reduction in the plaintiff's left thigh strength, tenderness in the low back with a decreased range of motion, and a mildly positive straight leg raise on the left side. Dr. Cassel noted increasing symptoms of depression, prescribed a Depo-Medrol injection, Flexeril and Lexapro, and told the plaintiff to return in three to four weeks. (R. at 146.)

In a letter dated September 12, 2006, Dr. Cassel opined that the plaintiff was unable to "sustain any work effort to hold a regular job." (R. at 150.)

The plaintiff returned on October 2, 2006, for a recheck appointment. Dr. Cassel noted no change. To avoid side effects experienced with the previous medication, Dr. Cassel switched the plaintiff's prescription to Zoloft and Vicoprofen. The plaintiff was told to return in four to five weeks for another recheck. (R. at 147.)

An MRI performed on December 5, 2006, at Holston Valley Imaging Center revealed a minimal broad-based disc bulge at L4-5, but no discrete nerve root compression. It indicated a canal and foramina, and that lateral recesses had

-4-

Case 2:08-cv-00035-JPJ-PMS   Document 16   Filed 06/26/09   Page 4 of 13   Pageid#: 69

remained patent. It demonstrated a mild left neural foraminal narrowing without discrete nerve root compression at L5-S1. (R. at 186-87.) Dr. Cassel stated that the MRI was fairly normal and believed that there was nothing to "fix," and described the plaintiff's mood as "okay." He prescribed Neurontin and encouraged the plaintiff to continue walking to strengthen his muscles. (R. at 184.)

On February 22, 2007, the plaintiff told Dr. Cassel that he had injured his left arm exiting his car and complained of a needle-like pain. He also explained that he had a "bad spell" with his back. Dr. Cassel described the plaintiff's mood as "much better" and found no tenderness or swelling in the elbow. But at full extension, the plaintiff experienced some pain and discomfort there. Vicoprofen was prescribed for back pain. (R. at 232-33.)

The plaintiff saw Dr. Cassel again for a recheck on April 19, 2007. He complained of pain in the left arm, in areas below the elbow and close to the shoulder. Dr. Cassel found no reason to explain the tenderness. He prescribed Lortab and Acetaminophen and told the plaintiff to continue taking Neurontin. (R. at 230-31.)

During a follow up exam on June 19, 2007, Dr. Cassel described the plaintiff as "stable," in a "better mood," and with no changes in his back. Dr. Cassel told the plaintiff to continue taking Lortab and to start taking Flexeril for muscle spasms. (R. at 212.)

The plaintiff returned to Dr. Cassel on August 20, 2007, complaining of bad spells with his leg and back, some mood swings with depression, and some pain in his left shoulder. Dr. Cassel noted no change in the back, okay reflexes, and apparent equal strength in his legs. (R. at 226.)

On August 30, 2007, Dr. Cassel assessed the plaintiff's ability to do work-related activities. Dr. Cassel noted that the plaintiff's symptoms would require him to lie down for approximately one hour and forty minutes out of every eight hours in a typical workday. The plaintiff was limited in his ability to reach and operate foot controls, and could never climb ladders, crouch, or crawl. (R. at 234-37.)

William Humphries, M.D., performed a consultative examination on October 24, 2006. Dr. Humphries had found that the range of motion in the plaintiff's neck was slightly reduced and that the range of motion in the back was slightly reduced with a tenderness to palpation of the paraspinous musculature of the extreme lower lumbar region and of the left gluteal region. The joint range of motion of the upper extremities was full without tenderness, heat, swelling, or deformity. The lower extremity joint range of motion was full tenderness, heat, swelling, or deformity, except slightly reduced in the left hip. On neurological examination, Dr. Humphries described the plaintiff's gait as mildly antalgic on the left side, indicated that the plaintiff had difficulty with heel-and-toe standing due to pain in the left gluteal and

hip region, and found some diminished muscle mass on the left quadriceps. Mentally, the plaintiff was alert and oriented to three spheres. He demonstrated intelligible speech, appropriate behavior, normal thought and idea content, an intact memory, normal intelligence, and a slightly flat affect. He appeared slightly depressed. Dr. Humphries diagnosed the plaintiff with post traumatic pain in the left gluteal pelvis region and multiple arthralgias, but did not rule out early rheumatoid disease or early degenerative joint disease. He limited the plaintiff to sitting, standing, and walking for six hours in an eight hour workday; to lifting fifty pounds occasionally and twenty-five pounds frequently; and to occasional climbing, kneeling, or crawling. No restrictions were put on stooping or crouching, but it was recommended that he should avoid heights and hazards. (R. at 180-82.)

Donald Williams, M.D., and Thomas Phillips, M.D., echoed Dr. Humphries views. They agreed with the lifting requirements and found that the plaintiff could sit, stand, or walk for approximately the same amount of time as that determined by Dr. Humphries. (R. at 154-60, 190-96.)

Two state agency psychologists reviewed the plaintiff's medical history. Louis Perrott, Ph.D., performed a Psychiatric Review Technique on November 11, 2006. He indicated that the plaintiff had depression, but rated as mild the plaintiff's restriction of daily living activities and difficulties in maintaining social functioning.

(R. at 168, 175.) Dr. Perrott found no restrictions in the plaintiff's ability to maintain concentration, persistence, or pace. (R. at 175.) Nor did he consider the plaintiff's depression "to be of severe and disabling proportion." (R. at 177.) On March 6, 2007, Richard Milan, Jr., Ph.D. made the same conclusions. (R. at 198-211.)

The evidence in this case also includes the plaintiff's testimony regarding his subjective claims and his activities of daily living. During the hearing, the plaintiff complained of back pain that radiates down his left leg. He also related problems with his "nerves" and with depression. He drives his children to school every day and watches television. He rarely goes out and stays close to home. The plaintiff complained of pain in his left arm, but explained that he could still use that arm. He rests daily for two to three hours and has trouble sleeping at night. He also related difficulty concentrating. (R. at 24-30.)

Based upon the evidence, the ALJ determined that the plaintiff had the residual functional capacity to perform the full range of light work. Though incapable of engaging in past relevant work, the ALJ found that the plaintiff could adjust to other work. And because there were a significant number of jobs in the national economy that the plaintiff could perform, the ALJ concluded that the plaintiff was not disabled as defined in the Act. (R. at 12-17.)

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423.

The Commissioner applies a five-step sequential evaluation process in assessing DIB and SSI claims. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2008). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *See id.*; *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987). The fourth and fifth steps in this inquiry require an assessment of the claimant's RFC, which is then compared with the physical and

mental demands of the claimant's past relevant work and of other work present in the national economy. *See* 20 C.F.R. §§ 404.1560(b)-(c), 416.960(b)-(c) (2008).

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard has been applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence exists, the final decision of the Commissioner must be affirmed. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (internal quotations omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws*, 368 F.2d at 642. It is the role of the ALJ to resolve evidentiary conflicts, including inconsistences in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner, as long as substantial evidence provides a basis for the Commissioner's decisions. *See Hays*, 907 F.2d at 1456.

The plaintiff contends that the ALJ erred by not giving Dr. Cassel's opinions controlling weight. I disagree.

Dr. Cassel opined that the plaintiff was unable to "sustain any work effort to hold a regular job." (R. at 150.) He also believed that the plaintiff would need to lie down for approximately one hour and forty minutes during every eight-hour workday.

-10-

(R. at 235.) Dr. Cassel indicated that the plaintiff was limited in his ability to reach and operate foot controls, and that he should never climb ladders, crouch, or crawl. (R. at 236-37.)

Even if Dr. Cassel qualified as a treating physician, his opinions did not deserve controlling weight. The opinion of a treating physician controls only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2) (2008). If not controlling, the weight afforded to a treating physician's opinion depends on the extent to which the opinion "presents relevant evidence to support an opinion, particularly medical signs and laboratory findings . . . ." 20 C.F.R. § 404.1527(d)(3) (2008).

Dr. Cassel's opinions not only lack diagnostic support, but they also conflict with his own findings. For instance, Dr. Cassel explained that an MRI of the plaintiff's back dated December 6, 2006, was normal, and that there was nothing to fix. (R. at 184.) He failed to find anything wrong with the plaintiff's elbow or arm. (R. at 230-31.) Nowhere in his notes does Dr. Cassel mention the limitations that he included in his letter.

Those limitations are inconsistent with the opinions of three other doctors. Dr. Humphries found that the plaintiff could lift fifty pounds occasionally and twenty-

-11-

five pounds frequently, and could occasionally climb, kneel, or crawl. (R. at 180-82.) Dr. Williams and Dr. Phillips concurred. (R. at 154-60, 190-96.)

Accordingly, I find that the ALJ properly refused to give Dr. Cassel's opinions controlling weight.

The plaintiff also argues that the ALJ erred by failing to find that he had a severe mental impairment. Again, I disagree.

Though the plaintiff underwent treatment for depression, Dr. Cassel noted that his symptoms improved with medication. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). For example, after being prescribed Lexapro and Zoloft, Dr. Cassel stated that the plaintiff's mood was "okay." (R. at 184.) Later, Dr. Cassel described his mood as "much better." (R. at 232.) The plaintiff continued treatment with Lortab and Neurontin, and was later described as "stable," and in a "better mood." (R. at 212.)

Dr. Humphries commented that the plaintiff had "appeared slightly depressed," but did not note other mental abnormalities. (R. at 181.) Dr. Perrott and Dr. Milan made similar findings. In fact, Dr. Perrott stated that whatever the plaintiff's mental impairment, it was "not considered to be of severe and disabling proportion." (R. at 177.)

Therefore, I find that there is substantial evidence to support the ALJ's determination that the plaintiff did not suffer from a severe mental impairment.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the Commissioner's Motion for Summary Judgment will be granted. An appropriate final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: June 26, 2009

/s/ JAMES P. JONES
Chief United States District Judge

-13-

Case 2:08-cv-00035-JPJ-PMS   Document 16   Filed 06/26/09   Page 13 of 13   Pageid#: 78